

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00388-CV

Jason Matthew **SMITH** and Christa Eve Smith,
Appellants

v.

Dana G. **KIRK**, Trustee of Kirk Ranch Trusts,
Appellees

From the County Court at Law, Kerr County, Texas
Trial Court No. 18935C
Honorable Susan Harris, Judge Presiding

Opinion by:　Irene Rios, Justice

Sitting:　　Rebeca C. Martinez, Chief Justice
　　　　　Irene Rios, Justice
　　　　　Liza A. Rodriguez, Justice

Delivered and Filed: May 25, 2022

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

This appeal arises from a suit for declaratory judgment to recover $30,000 in earnest money paid by appellants Jason Matthew Smith and Christa Eve Smith ("the Smiths") for the purchase of real property. The Smiths and appellee Dana G. Kirk, Trustee of the Kirk Ranch Trusts ("Kirk"), filed competing motions for summary judgment following the termination of two earnest money contracts. The trial court denied the Smiths' summary judgment and granted Kirk's summary judgment awarding Kirk the earnest money. We affirm in part and reverse and remand in part.

## BACKGROUND

The Smiths and Kirk executed two earnest money contracts for the sale of a house and approximately fifty-five acres located in Kerr County and owned by the Kirk Ranch Trusts ("the Property"). One contract included the house and twenty acres ("Contract 1"), and the second contract included the remaining thirty-five acres ("Contract 2") for the combined sale price of $2,300,000. The Smiths paid $30,000—$29,000 under Contract 1 and $1,000 under Contract 2— in earnest money to the title company.

Prior to closing, the Smiths terminated Contract 1.[1] In response, Kirk filed suit against the Smiths seeking a declaratory judgment to recover the $30,000 earnest money. The Smiths counterclaimed also requesting a declaratory judgment to recover the earnest money for themselves.[2]

The Smiths moved for summary judgment asking the trial court to declare they are entitled to the earnest money. In a combined pleading, Kirk responded to the Smiths' summary judgment motion and asserted a cross-motion for summary judgment seeking the earnest money.

The trial court denied the Smiths' motion for summary judgment and granted Kirk's motion for summary judgment, ordering the earnest money be paid to Kirk. The Smiths appealed.

## STANDARD OF REVIEW

We review a trial court's ruling on a summary judgment motion de novo. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). To prevail on a

---

[1] Pursuant to the terms of Contract 2, Contract 1 "must close and fund prior to [closing Contract 2]." Therefore, Contract 2 terminated upon Contract 1's termination.

[2] The Smiths also counterclaimed for fraud in a real estate transaction; however, the Smiths did not move for summary judgment based on this claim. As a result, we abated this case and remanded it to the trial court to clarify the finality of its judgment. The trial court signed an amended judgment denying "[a]ll relief on any claim or cause of action made by any party not expressly granted" by the order. *See Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801–02 (Tex. 2020) (holding "a judgment is final *either* if 'it actually disposes of every pending claim and party' *or* 'it clearly and unequivocally states that it finally disposes of all claims and all parties'" (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001))).

traditional summary judgment motion, the movant must show no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In reviewing a trial court's summary judgment ruling, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

When the parties file competing summary judgment motions, each movant bears the burden of establishing its entitlement to judgment as a matter of law. *Tarr*, 556 S.W.3d at 278. When both parties move for summary judgment and the trial court grants one party's motion for summary judgment—while denying the other party's motion for summary judgment—the unsuccessful party may appeal both the grant of the prevailing party's motion and denial of its own motion. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Typically, in such a case, a reviewing court should review both parties' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Valence Operating Co. v Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "However, if resolution of the issues rests on disputed facts, summary judgment is inappropriate, and the reviewing court should reverse and remand for further proceedings." *Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex. 1983)); *see also Stokwitz v. Tinajero*, No. 04-19-00773-CV, 2020 WL 7364656, at *4 (Tex. App.—San Antonio Dec. 16, 2020, no pet.) (mem. op.) (remanding case with competing summary judgment motions for further proceedings when resolution of an issue rested on disputed facts).

## DISCUSSION

In their first issue, the Smiths argue the trial court erred when it granted Kirk's motion for summary judgment because they terminated Contract 1 pursuant to the terms of the Third-Party Financing Addendum ("Financing Addendum"). The Financing Addendum contains two subsections regarding approval of financing—Buyer Approval and Property Approval.

*Buyer Approval*

The Buyer Approval subsection provides that if the buyer fails to obtain buyer approval and notifies the seller within five days from the effective date of the contract, the contract terminates and the buyer receives an earnest money refund.

The Smiths terminated Contract 1 well outside the five-day period provided to them to terminate the contract.[3] Once the termination period expires, "the contract shall no longer be subject to the Buyer obtaining Buyer Approval[.]" Therefore, the Smiths could not have terminated Contract 1 and received a refund of their earnest money under the Buyer Approval subsection.

*Property Approval*

The Property Approval subsection applies to the lender's acceptance of the property. Specifically, the subsection provides:

> Property Approval: Property Approval will be deemed to have been obtained when the Property has satisfied lender's underwriting requirements for the loan, including but not limited to appraisal, insurability, and lender required repairs. If Property Approval is not obtained, Buyer may terminate this contract by giving notice to Seller before closing and the earnest money will be refunded to Buyer.

The parties do not dispute the Smiths terminated the contract prior to closing. Thus, the issue before us is whether either party conclusively established, as a matter of law, that the Property

---

[3] The parties executed Contract 1 on June 29, 2018. The Smiths terminated Contract 1 on September 18, 2018.

did or did not satisfy the lender's underwriting requirements under the Property Approval provision.

The Smiths maintain they terminated Contract 1 under the Financing Addendum Property Approval provision because their lender did not approve the Property. As such, the Smiths argue they are entitled to the earnest money.

In response, Kirk contends the Property met the lender's underwriting requirements and therefore the Smiths could not terminate the contract under the Property Approval provision. Specifically, Kirk argues (1) the appraised value of the property, under either the sales comparison approach or the cost approach, met or exceeded the total sale price of the contracts; (2) Kirk secured a title commitment for title insurance; and (3) the Smiths' lender did not notify Kirk of any required repairs. Kirk argues the Smiths breached Contract 1 and therefore Kirk is entitled to the earnest money as liquidated damages.[4]

We agree the evidence indicates the appraised value meets or exceeds the purchase price of the Property. Kirk also provided a title insurance policy for the Property, and the record contains no evidence the lender required any repairs prior to approving the Property. However, contrary to Kirk's contention, the Property Approval provision does not state that those three categories are all that is required to satisfy a lender's underwriting requirements. Rather, the applicable clause in the provision states: "Property Approval will be deemed to have been obtained when the Property has satisfied lender's underwriting requirements for the loan, *including but not limited to* appraisal, insurability, and lender required repairs."

In construing a contract, our primary concern is to ascertain the parties' intentions, as expressed in the contract. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.

---

[4] The default provision of paragraph 15 of Contract 1 provides: "If Buyer fails to comply with this contract, Buyer will be in default, and Seller may . . . terminate this contract and receive the earnest money as liquidated damages[.]"

1998). To ascertain the parties' intentions, we examine the entire agreement to harmonize and give effect to all its provisions so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). When a contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

Under the Code Construction Act, we note the word "including" is a term "of enlargement and not of limitation or exclusive enumeration, and use of the term[] does not create a presumption that components not expressed are excluded." TEX. GOV'T CODE § 311.005(13). Therefore, when construing the Property Approval provision, we conclude a lender's approval of the property is not limited to (1) whether the property appraised for the total sale price, (2) whether the seller obtained a title insurance policy, and (3) whether the lender required repairs. Rather, under the Property Approval provision, a lender's approval of the property may include other factors that impact a lender's underwriting requirements to fund a loan for the purchase of the property.

Here, the summary judgment evidence does not conclusively establish the lender approved the Property. The Smiths provided email exchanges between Christa Smith and Paul Markoski, the Smiths' mortgage broker, wherein Markoski explained the land was not the issue. Markoski noted the "monster sized house" on the Property compared to the appraiser's "comps that were significantly smaller than the subject property" was an issue. Markoski added "[m]ost comps were only in the 3000s [square foot] range and [the Property's house] is over 15,000. Based on the [a]ppraisal, [the lender] feel[s] the property is overbuilt for the neighborhood[.]" The Smiths also provided Markoski's affidavit containing Markoski's statement that he "was unable to get the Property approved by a lender[.]"

In contrast, Kirk argues the Smiths terminated the contract because they failed to secure financing to buy the Property, not because the lender did not approve the Property. To support this assertion, Kirk provided an email exchange between Markoski and the loan processor indicating the mortgage company—after further evaluating the Smiths' loan portfolio—would only approve a 70% maximum loan-to-value amount rather than the original 85% loan-to-value amount the Smiths expected. Additionally, Kirk presented a Conditions Sheet from ACC Mortgage indicating the mortgage company suspended the loan process when Jason Smith was identified on the "national fraud database" as evidence that the Smiths' financing troubles caused them to cancel the contract.

The parties' summary judgment evidence creates a genuine issue of material fact on whether the Smiths terminated Contract 1 because the Property failed to satisfy the lender's underwriting requirements under the Property Approval provision. Because a genuine issue of material fact exists, the trial court erred when it granted Kirk's motion for summary judgment.

Accordingly, the Smiths' first issue is sustained.

In their second issue, the Smiths argue the trial court erred when it denied their motion for summary judgment. As mentioned above, there is a genuine issue of material fact on whether the Smiths could terminate Contract 1 under the Property Approval provision. Because a genuine issue of material fact exists, the Smiths failed to show they are entitled to judgment as a matter of law. The trial court did not err when it denied the Smiths' motion for summary judgment.

Accordingly, the Smiths second issue is overruled.

**CONCLUSION**

We affirm the portion of the trial court's judgment denying the Smiths' motion for summary judgment. We reverse the portion of the trial court's judgment granting Kirk's motion for summary judgment and remand the case for further proceedings consistent with this opinion.

Irene Rios, Justice